Ms. Andree Trosclair, L.C.S.W., J.D. Employee Relations Manager Arkansas Children's Hospital 800 Marshall Street Little Rock, Arkansas 72202-3591
Dear Ms. Trosclair:
This is in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether employment records pertaining to Mr. Robert Marsh, a former employee of Arkansas Children's Hospital ("ACH"), are subject to inspection and copying under the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§25-19-101 to 107 (Repl. 1996, as amended by Acts 540, 873, and 1335 of 1997). Specifically, you note that on May 27, 1997, I issued Op. Att'y. Gen. 97-154 to Mr. Doug Smith with the Arkansas Times in answer to his questions about Mr. Marsh's employment records with ACH. At the time of issuance of that opinion, I did not have the actual records in question, and thus set out the relevant legal tests to be applied in determining whether those records were subject to release under the FOIA. You note that prior to the issuance of Opinion 97-154, Mr. Smith made his FOIA request and was allowed access to certain "personnel records" pertaining to Mr. Marsh's former employment. You also note, however, Mr. Smith was denied access to certain "personal information" pertaining to Mr. Marsh's employment. You note that in an effort to address Mr. Smith's request and ACH's concern for private employee information, you now submit for my review the actual "personnel and personal records" of Robert Marsh maintained during his employment at ACH. You request that I review these documents and address the following questions:
 1. Is the personal information separated from the personnel file of Robert Marsh protected under Section 25-19-105(b)(10) or another section of the Act?
 2. Is there a `compelling public interest,' based upon Mr. Smith's request, which warrants the public disclosure of this information?
You have segregated the actual records submitted for my review into two separate compilations, one entitled "personnel information" and one entitled "personal information." It is my understanding that everything in the compilation entitled "personnel information" was released for Mr. Smith's review. The disclosability of these records is therefore not at issue and they will not be discussed herein. The other group of records, the "personal information," was withheld from Mr. Smith's inspection, and it is these records to which your questions pertain.
It is my opinion, as more fully explained below, that to the extent ACH is an entity subject to the Act, there are at least two documents contained in the "personal information" which should be released to Mr. Smith for inspection and copying.
As was noted in Op. Att'y. Gen. 97-154, an initial question may arise as to whether ACH is an entity subject to the provisions of the FOIA. This question involves a factual determination, and as such must be determined by a factfinder, i.e. a court. It was noted in Opinion 97-154 that ACH's response to Mr. Smith's FOIA request appeared to acknowledge that it is an entity subject to the FOIA. I make no conclusion herein as to the applicability of the FOIA to ACH, but will assume such applicability for purposes of addressing your questions. I will note, however, that I am reluctant to discuss in detail the content of the records which I opine herein should be released for inspection and copying, in the absence of a determination that ACH is an entity subject to the FOIA. Because ACH has itself asked for my opinion, however, and invoked my statutory duty to opine upon the disclosability of the records, I must identify the records and their content sufficiently to render my opinion.
In my opinion the great majority of the records contained in the "personal information" were properly excluded from inspection and copying under the FOIA. The bulk of the records contain personal financial information, employee benefit information, insurance coverage information, and tax records. I have previously opined in numerous opinions, as has my predecessor, that this type of information is not subject to inspection and copying because its release would give rise to a "clearly unwarranted invasion of personal privacy" under A.C.A. §25-19-105(b)(10) (Repl. 1996). See Ops. Att'y. Gen. 97-177, n. 1; 96-134; 96-132; 95-242; 95-110; 94-235; 94-198; 93-055; 91-093; 90-089; 90-027; 89-003; and 87-442.
Thus, these records, in response to your first question, were properly "protected" and shielded from public inspection under A.C.A. §25-19-105(b)(10).
The remaining records included in the "personal information" are "performance evaluations," and two pages of documents (the second and third pages of the "personal information" submitted)[1] relating to Mr. Marsh's employment status. "Employee evaluation and job performance records," as noted in Opinion 97-154, are subject to a different legal test than "personnel records." Such records are only subject to inspection and copying if there has been a final administrative resolution of a suspension or termination proceeding, the records formed a basis for the decision to suspend or terminate, and there is a "compelling public interest in their disclosure." It was noted in Opinion97-154 that if there has been no suspension or termination of the employee, "the inquiry as to `employee evaluation or job performance records' ends." Op. Att'y. Gen. 97-154 at 3. It was clearly indicated that the records are not open in such a case, and it is not necessary in that instance to address whether a "compelling public interest" in the disclosure of the records exists. Nonetheless, your second question asks whether a compelling public interest exists in the release of records contained in the "personal information" of Mr. Marsh, thus acknowledging the necessity of applying the "compelling public interest" test.
It is my opinion, in any event, that the performance evaluations are not subject to inspection and copying under the FOIA irrespective of the "compelling public interest" test. These evaluations do not appear to have "formed a basis" for any decision to suspend or terminate the employee. This is of course a factual determination within the knowledge of the custodian of the records, but it does not appear to me from a review of the records that the evaluations "formed a basis" for any suspension or termination decision.
With regard to the two pages of records relating to Mr. Marsh's employment status, it is my opinion that these records should be released for inspection and copying by Mr. Smith with the social security number deleted. It is unclear, as an initial matter, whether these documents are properly classified as "personnel records," or as "employee evaluation or job performance records" for purposes of the FOIA. As noted above, a different legal test applies to the release of each. Previous opinions of this office would appear to indicate that the records are properly classified as "employee evaluation or job performance records." Seee.g., Ops. Att'y. Gen. 96-258; 96-171; 88-097. Under either test, in my opinion, these documents are subject to inspection and copying. In my opinion their release would not give rise to a "clearly unwarranted invasion of personal privacy," under the relevant test for "personnel records,"[2] and in my opinion, all of the requisite factors for the release of "employee evaluation or job performance" records have been met with regard to these records. With regard to your specific second question, inquiring as to whether there is a "compelling public interest" in the release of these records, it has been stated by a recognized commentator on the FOIA that "the mere fact that an employee has been suspended or terminated does not mean that the records should be made public[.]" J. Watkins, The Arkansas Freedom of Information Act 135 (2d ed. 1994). Professor Watkins notes that "[t]he nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Id. He also notes that "[t]he status of the employee — or, perhaps more precisely, his rank within the bureaucratic hierarchy — may also be relevant. . . . As a practical matter, courts may be more likely to find [a compelling public interest] when a high-level employee is involved than when the evaluations of `rank-and-file' workers are at issue." Id. at 136. As also pointed out by Professor Watkins, however, "a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 137. Professor Watkins notes that: ". . . it seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position with the agency." Id. at 136-37.
It is my understanding from the documents enclosed with your request that Mr. Marsh was employed by ACH as Administrative Director of the "Child Health and Family Life Institute,"[3] a fairly high-ranking position with ACH. It is also my understanding that Mr. Marsh has been recently employed by a governmental entity, Pulaski County, as its finance director, or "controller," a high-ranking position in Pulaski County government. Although the content of the documents in question do not provide detailed information as to the nature of the infraction in question, it is my opinion that it gives rise to a "compelling public interest" when viewed in conjunction with the public's interest in the actions of both ACH and Pulaski County with regard to this high-ranking employee. This office has previously concluded that a "compelling public interest" existed with regard to the release of records pertaining to other high-ranking employees when viewed in conjunction with the nature of the particular infraction leading to suspension or termination. Seee.g. Op. Att'y. Gen. 95-242 (records pertaining to assistant city manager gave rise to compelling public interest); 96-258 (records pertaining to vice-president of Arkansas Development Finance Authority gave rise to compelling public interest); 95-109 (records pertaining to Arkansas Arts Council Director gave rise to a compelling public interest); 95-258 (records of Arkansas Arts Council Agency Program Coordinator (Grants Programs Manager) gave rise to a compelling public interest).
It is therefore my opinion, to the extent that the two pages of documents relating to Mr. Marsh's employment status are "employee evaluation or job performance records," that a "compelling public interest" does exist in their disclosure.
Of course, the conclusions reached herein do not prohibit the parties from seeking judicial review of the documents and issues in question.See A.C.A. § 25-19-105(c)(3)(C) (Repl. 1996).
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] These two documents may be two copied pages of a single record which was printed front and back in original form.
[2] As noted in Op. Att'y. Gen. 97-154, this test is discussed in detail in Op. Att'y. Gen. 96-193, and it involves the weighing of the public's right to knowledge of the records against the individual's right to privacy. The privacy right attaches when "intimate details" of the employee's life are contained in the records. A substantial privacy interest has been found in records, the release of which might subject the person to embarrassment, harassment, loss of employment or friends.
[3] There is some indication in the correspondence enclosed with your request that this institute is a "part of the University of Arkansas For Medical Sciences Department of Pediatrics at Arkansas Children's Hospital." See Letter dated May 16, 1997 to Phillip Gilmore from Doug Smith.